UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Civil No. 10-3090 (RHK/TNL)

**Adrian Williams,**

    Petitioner,                                    **REPORT AND RECOMMENDATION**

v.

**Bruce Reiser, Warden**

    Respondent.

___

Reynaldo A. Aligada, Jr., Esq., for Petitioner.

David C. Brown, Assistant Hennepin County Attorney, on behalf of Respondent.
___

TONY N. LEUNG, United States Magistrate Judge.

This matter is before the undersigned United States Magistrate Judge on Adrian Williams' Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 ("Petition") [Docket No. 1] and Respondent's motion to dismiss [Docket No. 7]. The case has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court recommends that the habeas petition be dismissed with prejudice because it is barred by the one-year statute of limitations.

**I.    BACKGROUND**

Petitioner Adrian Williams ("Williams") is a State of Minnesota inmate incarcerated in the Minnesota Correctional Facility in Rush City, Minnesota. (Pet'r Resp. Addressing the Timeliness of the Pet. ("Pet'r Resp."), Ex. A, Affidavit of Adrian

1

Williams ("Williams' Aff.") [Doc. No. 36-2] ¶1.)  Williams is serving a life sentence with possibility of parole for first-degree murder.  (Pet., ¶¶3, 5; App'x to Mem. Supp. Mot. to Dismiss Pet. for Writ of Habeas Corpus [Doc. No. 9] ("RA")) at 12.)  He was convicted and sentenced on April 22, 1997.  (Pet., ¶2.)  In his direct appeal, Williams raised the following issues:  1) deprivation of his right to present a defense because the trial court excluded testimony of victim's practice of selling fake crack cocaine; 2) trial court erred in allowing state to introduce rebuttal testimony after close of defendant's case; and 3) prosecutorial misconduct in closing argument.  *State v. Williams*, 586 N.W.2d 123, 124 (Minn. 1998).  The Minnesota Supreme Court denied his appeal on October 22, 1998.  *Id.* at 124-26.

Williams filed a petition for post-conviction relief on July 30, 2007, raising the following claims:  1) trial court erred by not removing a biased juror; 2) prosecutor failed to disclose several police reports until just before trial; 3) district court erred by refusing defense request for four-day continuance to investigate late-disclosed reports; 4) trial counsel was ineffective because he failed to object to a biased juror's service, failed to object to prosecutorial misconduct, failed to accept a two-day continuance, and failed to fully investigate; and 5) appellate counsel was ineffective because she failed to pursue ineffective trial counsel claims, failed to request a transcript of jury questioning, and failed to question Williams in an age-appropriate manner.  *Williams v. State*, 764 N.W.2d 21 (2009).  The petition was denied on September 6, 2007.  (Pet., ¶11, Ex., Order and Memorandum, *State v. Williams*, No. 27-CR-95-090827 (Hennepin County District Court, Sept. 6, 2007.))  Williams appealed the denial of his claims, and the

Minnesota Supreme Court affirmed on April 16, 2009, entering judgment on June 15, 2009. *Williams*, 764 N.W.2d at 25; (RA at 89.)

On July 23, 2010, Williams filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, stating five grounds for relief: 1) denial of Sixth Amendment right to an impartial jury; 2) denial of Fourteenth Amendment right to due process because the prosecutor failed to disclose a police report beneficial to the defense; 3) denial of constitutional rights under Sixth and Fourteenth Amendments because the trial court did not grant an adequate continuance for defense counsel to investigate late-produced evidence; 4) violation of Sixth Amendment by ineffective assistance of trial counsel; and 5) violation of the Sixth Amendment by ineffective assistance of appellate counsel on direct appeal. On September 22, 2010, Respondent filed a motion to dismiss the petition as time-barred, pursuant to 28 U.S.C. § 2244(d). Discovery was conducted. On September 15, 2011, Williams filed a response addressing the timeliness of his petition. [Doc. No. 36.] Respondent filed a reply, and Williams also replied. [Doc. Nos. 37, 42.]

Williams was fifteen years old at the time of his arrest in 1995, and was certified as an adult for trial. (Williams Aff., ¶¶3, 4.) On April 11, 1997, during Williams' trial, the trial judge held an in-chambers session with counsel, and questioned jurors about an incident where one juror made a statement or a joke about being a white supremacist, and he displayed a pocket knife. (Pet'r Resp., Ex. C, Partial Trial Transcript at 3.) Williams knew the trial court was going to hold a hearing about alleged juror misconduct on April 11, 1997, but he waived his appearance at the hearing. (*Id.* at 2.) Williams was in court later that day when the juror hearing was discussed in a defense motion for a

mistrial. (Resp't Supplemental App'x ("RSA") [Doc. No. 38], at 1-5.) Williams was later given an audio recording of the in-chambers hearing, but the tape recorder provided to him did not work. (Williams Aff., ¶6.) Williams told counsel he was unable to listen to the recording, but he was never given another opportunity. (*Id.*)

The trial court denied the motion for mistrial because the juror who made the comment about being a white supremacist was dismissed, and the remaining jurors unequivocally said they could be fair and impartial going forward. (RSA at 4-6.) The trial transcript, which included the in-chambers hearing, was delivered to Williams' appellate counsel on October 20, 1997. (Resp't Reply to Pet'r Mem. Addressing the Timeliness of the Pet. ("Resp. Reply") [Doc. No. 37] at 4.)

The in-chambers transcript contained information that was not discussed during the motion for mistrial held in front of Williams. (Pet'r Reply [Doc. No. 42] at 1-3.) The judge's clerk said the juror was almost crying and "really shaking" when she reported what happened. (RA at 17.) One juror said "I'm a white supremacist," and he took a knife out of his pocket and showed it to another juror, stating "I'm a juror. What are they going to do about it?" (RA at 18.) Others jurors heard this, and then the room went silent. (RA at 19.) The trial judge questioned the juror who made the white supremacist comment and showed the knife, and dismissed him from the jury. (RA at 32.) Another juror acknowledged sitting next to the dismissed juror and seeing the knife, but insisted he did not hear the white supremacist comment. (RA 36-37.)

In 2002, the Innocence Project of Minnesota ("Innocence Project") agreed to investigate Williams' case, and the investigation ended in May 2005, but Williams' relationship with the project lasted until January 2008. (Pet'r Resp., Ex. B, Affidavit of

4

Julie Jones ("Jones Aff.") ¶¶4, 6-7.) On June 2, 2008, Williams acknowledged receiving the transcript from the in-chambers juror questioning. (RA at 74.)

From the Innocence Project, Williams also learned of the late disclosure of a police report that occurred at his trial. (Williams Aff., ¶10.) The report provided names of two witnesses that Williams believed could have aided his defense. (*Id.*) During trial, there were discussions about the late-disclosed report of Officer Wagenpfeil at the bench, outside the hearing of Williams and the jury. (*Id.*) There was also questioning by defense counsel and testimony about the police report in front of Williams and the jury. (RSA at 13-16.) In 2004, Williams discussed the issue of the late disclosed police report with a student attorney from the Innocence Project. (RSA at 21.)

Williams' investigation of his case was interrupted by multiple transfers to different prisons. (Williams Aff., ¶9.) Williams unsuccessfully sought assistance from his trial lawyer, trial investigator, appellate attorney and the Legal Rights Center. (*Id.*, ¶12.) Williams was hampered by difficulty using computer research equipment in prison law libraries. (*Id.* at ¶14.) Just prior to filing his federal habeas petition, Williams was placed in segregation and his legal materials were taken from him. (*Id.*, ¶16.) Williams was in segregation from June 10, 2010 through June 25, 2010. (RSA at 9-12.) Williams was then in temporary housing status, without his legal paperwork, until June 30, 2010. (Pet'r Reply, Ex. 1.) Williams had several hours of library access on a number of days in early July 2010. (RSA at 23-25.)

## II. DISCUSSION

The parties acknowledge there is a split in the Circuit Courts over whether a statute of limitations challenge to a habeas petition is addressed on the basis of claim

by claim or the petition as a whole.[1]  The Eighth Circuit has not addressed the issue. This Court, however, need not reach the issue because the habeas petition here is time-barred under either analysis.

## A. Statutory and Legal Framework

28 U.S.C. § 2244(d) establishes a one-year statute of limitations for habeas corpus petitions filed by state prisoners seeking federal court review of a conviction or sentence.  The statute provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of - -
>
> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (d)(2)  The time during which a properly filed application for State post-conviction or other collateral review with respect

---

[1] The Eleventh Circuit applies the statute of limitations to the **application** for a writ of habeas corpus, a single filing date.  *Walker v. Crosby*, 341 F.3d 1240, 1245 (11th Cir. 2003) (emphasis in original).  Where several claims become final at different times, the latest of the possible triggering dates is used.  *Id.* at 1246.  The Third Circuit applies the habeas statute of limitations on a claim by claim basis.  *Fielder v. Varner*, 379 F.3d 113, 118-21 (3rd Cir. 2004).

6

> to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

A state court conviction is final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction. *O'Neal v. Kenny*, 579 F.3d 915, 918 (8th Cir. 2009) (citing *Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009). In 2005, Minnesota passed a law allowing inmates who were convicted before August 1, 2005 to file a post-conviction petition in state court, with a deadline of August 1, 2007. 2005 Minnesota Session Laws, c. 136, art. 14, § 13. But, if the one-year habeas limitation period already expired, the filing of a subsequent petition to the state for post-conviction relief does not toll the limitation period because there is no time period left to toll. *Curtiss v. Mount Pleasant Correctional Facility*, 338 F.3d 851, 853 (8th Cir. 2003) (citing *Painter v. Iowa*, 247 F.3d 1255 (8th Cir. 2001); *Moore v. Fabian*, Civil No. 10-3843 (JRT/FLN), 2011 WL 1827472 at *1 (D.Minn. May 12, 2011) (rejecting petitioner's contention that timely filing of petition for post-conviction relief under Minnesota's two-year statute of limitations tolled the one-year federal habeas statute of limitations after it expired).

A petitioner is entitled to equitable tolling of the statute of limitations if he shows that he pursued his rights with reasonable diligence, and that some extraordinary circumstance prevented him from timely filing. *Holland v. Florida*, 130 S.Ct 2549, 2562, 2565 (2010). Only circumstances beyond a prisoner's control that make it impossible to file the petition on time, or defendant's conduct that lulls the petitioner into inaction are extraordinary circumstances that allow equitable tolling. *Jihad v. Hvass*, 267 F.3d 803, 805 (8th Cir. 2001). The petitioner has the burden to demonstrate grounds for equitable

7

tolling.  *Earl v. Fabian*, 556 F.3d 717, 722 (8th Cir. 2009).  Lack of legal knowledge and resources are not bases for equitable tolling.  *Kreutzer v. Bowersox*, 231 F.3d 460, 463 (8th Cir. 2000).

**B.    The Triggering Event for the Commencement of the Statute of Limitations**

Williams' state court judgment became final on February 28, 1999, upon the expiration of his ninety-day-period to seek certiorari from the U.S. Supreme Court after the Minnesota Supreme Court denied his direct appeal.  Williams, however, contends there was a later triggering event for the habeas statute of limitations.  He asserts the factual predicate for his claims was not and could not have been discovered until June 2, 2008, when he received the transcript of the in-chambers questioning of jurors.  Williams also argues the same date should be used for his late disclosure claims because the application of the statute of limitations applies to the petition as a whole or because he learned of the issues related to the late disclosed police report from Innocence Project volunteers, and his relationship with the project ended in 2008.

"[T]he factual predicate of a petitioner's claims constitutes the vital facts underlying those claims."  *Earl v. Fabian*, 556 F.3d 717, 725 (8th Cir. 2009) (quoting *McAleese v. Brennan*, 483 F.3d 206, 214 (3rd Cir. 2007) (internal quotation marks omitted)).  There is a difference between knowledge of the factual predicate of a claim with "[the process of] gathering evidence in support of that claim."  *Id.* at 26 (citing *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998)).  In other words, "[a] desire to seek more information in the hope that something will turn up differs from the factual predicate of a claim or claims for purposes of 2244(d)(1)(D)."  *Id.* (quoting *Johnson v.*

8

*McBride*, 381 F.3d 587, 589 (7th Cir. 2004) (internal quotation marks omitted)). "Section 2244(d)(1)(D) does not convey a statutory right to an extended delay . . . while a habeas petitioner gathers every possible scrap of evidence that might . . . support his claim." *Id.* at *726* (quoting *Flanagan*, 154 F.3d at 199). Possession of a transcript is not necessary for filing a petition for post-conviction relief. *Jihad*, 267 F.3d at 806. After a petition is filed, the Court can order production of the transcript, if necessary. *Gassler v. Bruton*, 255 F.3d 492, 495 (8th Cir. 2001).

Williams was aware of a claim of juror bias during his trial because his counsel argued a motion for a mistrial, in Williams' presence, on the basis that remaining jurors were tainted by the dismissed juror's inappropriate comments and behavior. Williams did not have to obtain the transcript of juror questioning to discover a claim of juror bias; the transcript provided only details in support of such a claim, and could have been obtained through discovery, if necessary, after filing for post-conviction relief. Any ineffective assistance of counsel claims related to raising the juror bias claim were known at the time of trial and appeal.

Furthermore, Williams' claims concerning the late-disclosed police report were discoverable during trial, simply by asking his counsel about an objection that was discussed at the bench. The court sustained the prosecution's objection to hearsay elicited by defense counsel while questioning a witness about the police report. Even if due diligence did not require Williams to ask his counsel about the nature of the court's ruling and the issues raised by the police report, Williams discovered the issue in 2004 from an Innocence Project student volunteer. Assuming it was the last day of 2004 when Williams discovered his claim, the one-year limitation period would have expired

9

on December 31, 2005, long before Williams filed a state post-conviction motion. Filing a state post-conviction motion after the habeas limitation period expired does not restart the limitation period. *Jackson v. Ault*, 452 F.3d 734, 735 (8th Cir. 2006). In summary, Williams could have discovered the basis for all of his claims, at the latest, on December 31, 2004, and he has not established any later triggering event for the habeas statute of limitations. Unless equitable tolling applies, the habeas limitations period expired, at the latest, on December 31, 2005, years before Williams filed his habeas petition.

C. **Equitable Tolling**

Williams' habeas petition is time-barred unless he can show the limitation period should be equitably tolled from December 31, 2005 until he filed the habeas petition on July 20, 2010, given the benefit of the prison mailbox rule. Williams' argument that the habeas limitation should be equitably tolled because the Minnesota legislature passed a law in 2005 allowing him to file a state post-conviction petition seven years after his conviction became final is foreclosed by settled law: filing a state post-conviction motion after the habeas limitation period expired does not restart the limitation period. *Jackson*, 452 F.3d at 735; *Painter*, 247 F.3d at 1256 ("[t]he time between the date that direct review of a conviction is completed and the date that an application for state post-conviction relief is filed counts against the one-year period.")

The remaining reasons Williams offers for equitable tolling are his young age and ninth grade education at the time of trial; his reliance on trial and appellate counsel to discover the issues; his difficulty understanding the law; his difficulty using prison legal materials, including adjusting to new law libraries when transferred between prisons;

10

and his inability to get legal assistance. Most of these reasons for equitable tolling have been rejected by the Supreme Court or the Eighth Circuit Court of Appeals. *Holland*, 130 S.Ct. at 2564 (2010) (garden variety claim of attorney negligence does not warrant equitable tolling); *Earl*, 556 F.3d at 724 (lack of access to legal resources does not typically merit equitable tolling); *Kreutzer*, 231 F.3d at 463 ("Even in the case of an unrepresented prisoner alleging a lack of legal knowledge or legal resources, equitable tolling has not been warranted"); *Jackson*, 452 F.3d at 757 (attempt to obtain counsel does not equitably toll habeas statute of limitations).

Petitioner has not cited and the Court has not found an Eighth Circuit case addressing whether the habeas limitations period is equitably tolled because the petitioner was a minor with a limited education at the time of trial and direct appeal. Williams asserts he conducted himself before and after trial "in a way that is reasonable to expect from a 17-year-old" but the decisions he had to make in following counsel's advice were difficult "even for an adult experienced in the criminal justice system . . ." (Pet'r Resp. at 20). Regarding his limited education, Williams asserts "with an ninth grade education, [Petitioner's] ability to learn the complex web of law that applies to a state court prisoner attempting to file a federal postconviction petition was daunting, but he persevered." (*Id.*)

Williams raised the issue of his youth in his 2007 post-conviction motion, claiming appellate counsel was ineffective because she failed to question him in an age appropriate manner. *Williams v. State,* 764 N.W.2d 21, 32 (Minn. 2009). Williams argued he lacked the ability to know what trial issues should be appealed, similar to his claim here that he acted as diligently as could be expected of a 17-year old to discover

11

what claims to bring in post-conviction and habeas proceedings.  *Id.*  The Minnesota Supreme Court denied Williams' claim of ineffective assistance of appellate counsel because Williams failed to demonstrate how counsel was ineffective.  *Id.*  Williams' unsupported claim that his age and limited education warrant equitable tolling likewise fails to demonstrate how he was prevented from bringing timely juror bias and late disclosure habeas claims.  *See Collins v. Scurr*, 230 F.3d 1362 at *1 (8th Cir. 2000) (per curiam) (bald and unsupported assertions of mental incompetency at time of plea, absent showing that mental incompetency continued to preclude timely filing of habeas petition, did not equitably toll statute of limitations).  Petitioner knew his trial attorney brought an unsuccessful motion for mistrial based on juror bias; and he knew he had been unable to listen to the recording of the juror hearing because the tape recorder he was given did not work.  It would not require more experience and sophistication than a 17-year old would likely possess to investigate whether there was additional evidence to support bringing a juror bias claim in a post-conviction or habeas proceeding.

The late production of potentially exculpatory evidence was brought to Williams' attention by the Innocence Project in December 2004 at the latest, when Williams was 24-years old.  Based on the record and proceedings in this case, there is no basis to equitably toll the statute of limitations at that point; Williams was no longer a minor, and the basis of the claim had been brought to his attention.  He did not file his post-conviction motion until July 2007.  By then, the habeas limitation period expired.  Prisoners pursuing habeas claims are not exempt from the principle that everyone is presumed to know the law, including the habeas statute of limitations.  *Baker v. Norris*, 321 F.3d 769, 772 (8th Cir. 2003).  Furthermore, other courts have rejected claims that

persons who were minors at trial are entitled to tolling of the habeas statute of limitations by virtue of their status as minors. *See Hamilton v. Gonzalez*, No. C 09-1494 SI (pr), 2009 WL 3517612 at *4 (N.D. Cal. Oct. 26, 2009) (age did not prevent petitioner from filing a petition, and even if status as a minor was a tolling event, it would only toll the limitations period until the petitioner became an adult); *Minnifield v. Gomez*, 132 Fed.Appx. 931, 933-34 (2nd Cir. 2005) (extraordinary circumstances did not justify equitable tolling where petitioner was 17-years old at time of conviction but his mother was appointed guardian for the proceedings, and petitioner reached age of majority three months before time to file habeas petition expired).

Because equitable tolling does not apply through June 9, 2010, the Court need not determine whether the confiscation of Williams' legal materials while he was in segregation tolls the habeas limitation period. For these reasons, Respondent's motion to dismiss the petition as time-barred should be granted, and the habeas petition should be dismissed with prejudice.

## III. RECOMMENDATION

Being duly advised of all the files, records, and proceedings herein, IT IS HEREBY RECOMMENDED THAT:

1. Respondent's motion to dismiss [Doc. No. 7] be granted;
2. The habeas petition be dismissed with prejudice; and
3. That judgment be entered.

Dated this 12th day of September 2012.

                 *s/ Tony N. Leung*
                 TONY N. LEUNG
                 United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by October 15, 2012. A party may respond to the objections within 14 days after service thereof. Any objections or responses filed under this rule shall not exceed 3,500 words. The district court judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall forfeit review in the United States Court of Appeals for the Eighth Circuit